BAKER, JUDGE:
General Delivery, Inc., hereinafter referred to as claimant, brought this action for damages to its tractor-trailer which occurred in an accident on September 3,1990. Claimant alleges that respondent improperly maintained a runaway truck ramp on Interstate 68, in Monongalia County, on Cooper’s Mountain, in the area of Cheat Lake. Claimant’s tractor-trailer sustained severe *37 damages when it failed to stop on the ramp and proceeded over a hill adjacent to the ramp. The cost to repair both the tractor and the trailer is in the amount of $23,007.88.
Respondent contends that the truck escape ramp was properly maintained and that it worked properly in stopping the truck from going out of control.
At the hearing of this claim on June 28,1993, it was established that the driver of claimant’s tractor-trailer was Charles W. Cook, an employee of the claimant. On the date of the accident, he was operating the tractor-trailer proceeding westbound on 1-68, when the tractor-trailer lost its brakes and he turned onto the truck escape ramp, lost control of the tractor-trailer, whereupon, it went through the guardrail on the ramp and went over the hill. The cargo on the tractor-trailer was a load of Pepsi Cola lids for cans. The accident occurred at approximately 6:00 p.m.
Charles Cook testified that he was operating the tractor-trailer at approximately 45 miles per hour when he experienced the loss of the brakes. He turned the vehicle onto the escape ramp, turned to the right, the left drive axle went down into the gravel first, and when the right side of the tractor-trailer went into the gravel, he lost control. He had driven this section of 1-68 on many occasions, and he had seen this particular truck escape ramp many time, though he had never used it prior to the date of this accident.
Respondent established through the testimony of an enforcement officer for the West Virginia Public Service Commission, Sharon Randall, who investigated this accident, that the right front trailer brake failed, as indicated by the fact that the diaphragm had ruptured, causing an abrupt loss of air resulting in the brake failure. She explained that a ruptured diaphragm does not normally occur in an accident, but generally occurs before the accident, resulting in brake failure, and if some of the wheels are not braking, it can draw the tractor-trailer sideways.
Charles R. Lewis, II, a planning and research engineer for the Traffic Engineering Section of the Division of Highways, explained that “a truck escape ramp is kind of a last resort safety device. It’s placed at or near the bottom of a down grade where either a mechanical failure or a driver handling error or both may lead to the loss of some or all of the braking capability on a large vehicle, tractor-trailer, and the intent of the truck escape ramp is to give the driver an escape route so that he can get off the road and that the vehicle can be slowed to a stop safely, pretty much out of harm’s way with minimum damage.” He described the material on this particular ramp as pea gravel. Once a truck hits the gravel bed, there is little or no steering capability on the part of the driver.
The evidence in this claim established that the truck escape ramp on 1-68 at the site of this accident has two lanes. On the date of the accident, one of the lanes contained deep gravel similar to pea gravel, whereas the outside lane, i.e., the lane closest to the hillside, was a paved lane. Tractor-trailer rigs with brake failure are to proceed onto the ramp on the gravel side allowing the deep gravel to stop the tractor-trailer rig. The paved lane is for the use of tow trucks, which need *38 room to tow the tractor-trailer rigs from the ramp. The photographic evidence in this claim and testimony of the driver, Charles Cook, appear to establish that the tractor-trailer went onto this truck escape ramp with the left tires on the gravel and the right tires on the paved lane of the ramp. The tractor-trailer rig then veered sharply to the left, going through the guardrail and over the hill toward the westbound lanes of 1-68. The truck escape ramp was not effective in stopping this rig because all of the tires of the rig did not go into the deep gravel on the ramp at the same time. The driver evidently drove the tractor-trailer too close to the right side of the ramp onto the paved portion of the ramp. The lanes appeared to be fairly well delineated for driers to observe the difference in the lanes.
After having reviewed the testimony and evidence in this claim, the Court is of the opinion that there wan no improper maintenance of the truck escape ramp used by claimant’s driver. Claimant has failed to establish any negligence on the part of the respondent. The truck escape ramp was maintained in the manner for which its use was intended. The two lanes are necessary and it is unfortunate that the driver of claimant’s tractor-trailer drove the rig with the left wheels int the pea gravel and the right wheels on the paved portion rather than with both sets of wheels in the pea gravel lane. Therefore, this Court is unable to make an award to the claimant for the damages to its tractor-trailer.
In accordance with the findings of this Court as stated herein above, this Court is of the opinion to and does deny this claim.
Claim disallowed.